UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CRIMINAL NO. 07-08-KKC

UNITED STATES OF AMERICA,                                                 PLAINTIFF,

v.                                    **OPINION AND ORDER**

STEPHEN GREGORY MALCOLM,                                DEFENDANT.

\* \* \* \* \* \* \*

This matter is before the Court on the Motion to Suppress filed by the Defendant Stephen Gregory Malcolm (Rec. No. 21); the Magistrate Judge's Report and Recommendation (Rec. No. 32) recommending that the Motion to Suppress by denied; and Malcolm's objections to the Report and Recommendation (Rec. No. 36).

Pursuant to 28 U.S.C. 636(b)(1), the court must make a *de novo* determination of those portions of the Magistrate Judge's Report and Recommendation to which objection is made.

**I.    Background.**

Malcolm is charged with two counts of criminal conduct with regard to a fire that occurred on St. Claire Street in Frankfort, Kentucky on March 4, 2007. The first count charges that Malcolm maliciously damaged and destroyed and attempted to damage and destroy by fire certain buildings and businesses and other real and personal property in violation of 18 U.S.C. § 844(I). The second count charges Malcolm with making a materially false statement to ATF Special Agent Cary Smith in violation of 18 U.S.C. § 1001(a)(2) regarding where he was on the day of the fire. Malcolm has pleaded not guilty to both charges.

On June 4, 2007, Malcolm moved to suppress certain statements he made to Robert Young, special agent for the Bureau of Alcohol, Tobacco and Firearms ("ATF"), and Frankfort Police Detective Alan Burton at the ATF offices in Lexington, Kentucky on April 4, 2007. Specifically, Malcolm moves

to suppress certain statements he made regarding the fire and his admission that he was not truthful when interviewed by investigators approximately four days after the March 4th fire.

Malcolm argues that the April 4th interview was a "custodial interrogation" and, thus, before the interview, the investigators were required to advise him of his constitutional rights including the right against self-incrimination and the right to counsel as required by *Miranda v. Arizona*, 384 U.S. 436 (1966). Malcolm also argues that the investigators improperly continued the interview after he said he wanted to speak to an attorney. Finally, Malcolm argues that, after the investigators formally arrested him and advised him of his constitutional rights as required under *Miranda*, they improperly continued to question him even thought he had already said he wanted to speak to an attorney.

The Magistrate Judge conducted a hearing on this matter on June 8, 2007. After the hearing, the parties filed post-hearing memoranda. On July 2, 2007, the Magistrate Judge issued a Report and Recommendation finding that Malcolm was not "in custody" during the approximate first hour of the interview ending when he was formally arrested and Mirandized. Thus, the Magistrate Judge concluded, Malcolm did not have a right to counsel for that portion of the interview and the investigators were not required to Mirandize him.

In addition, the Magistrate Judge determined that Malcolm did not make an "unambiguous" request for counsel as required under *Davis v. United States,*, 512 U.S. 452, 458 (1994). Finally, the Magistrate Judge determined that, after Malcolm was placed under arrest and Mirandized, Malcolm impliedly waived his *Miranda* rights when he acknowledged that he understood his rights and continued with the interview.

Malcolm makes three specific objections to the Magistrate Judge's Report and Recommendation. First, he objects to the Magistrate Judge's factual finding that the two doors to the interview room were unlocked. Malcolm argues that one door was locked and required a magnetic pass to open.

Second, Malcolm objects to the Magistrate Judge's factual finding that "defendant was not restrained in any way." He argues that the investigators were seated between him and the two doorways leading out of the room and, further, that the office where the interview took place is a secured facility requiring an escort for visitors to exit. He also argues that the investigators implied that the interview was Malcolm's only chance to receive credit for accepting responsibility for the crime, thus adding to the coercive nature of the interview.

Finally, Malcolm objects to the Magistrate Judge's finding that the investigators informed him five different times during the interview that he was not under arrest. Malcolm asserts that the investigators told him only four times that he was not under arrest. Malcolm further objects to the Magistrate Judge's emphasis on the investigators' words regarding whether Malcolm was under arrest instead of upon the totality of the circumstances.

**II.     Analysis.**

As to Malcolm's assertion that one door to the interview room was locked, the Court has reviewed the videotape of the interview and it does appear that one door to the interview room required a magnetic pass to open. Nevertheless, the Magistrate Judge's determination that Malcolm was not "in custody" during the portion of the interview in question does not turn on whether one or both doors to the interview room were locked. Nor does the Magistrate Judge's conclusion turn on the number of times that the investigators informed Malcolm that he was not under arrest and that he was free to leave the interview room.

Instead, the Magistrate Judge's conclusion that Malcolm was not "in custody" for purposes of *Miranda* for the portion of the interview in question was based on the totality of the interview's circumstances, most significantly: the investigators did not tell Malcolm he had to attend the interview; Malcolm agreed to the interview; he drove himself to the ATF office; it is undisputed that the door

through which Malcolm entered the interview room was unlocked; it is undisputed that the investigators advised Malcolm multiple times during the portion of the interview in question that he was not under arrest and that he was free to leave; the investigator permitted Malcolm to go to the restroom during the interview and gave him a soft drink; and Malcolm was not handcuffed or otherwise restrained.

Given these circumstances, whether one or both doors or to the interview room were locked and no matter the precise number of times that the investigators told Malcolm he was not under arrest, the Magistrate Judge correctly determined that the Defendant was not "in custody" during the approximate first hour of the interview ending when Malcolm was formally arrested.

Malcolm complains that he was restrained by the seating arrangements in the interview room. However, the videotape shows that the investigators did not block Malcolm's access to the door of the interview room. Malcolm also complains that he was unable to exit the ATF offices without an escort. Agent Young did testify that, pursuant to ATF policy, all visitors to the ATF office must be escorted by ATF personnel. Assuming that Malcolm was even aware of the policy, at no time during the interview did the investigators indicate that such an escort would be unavailable to Malcolm should he choose to leave. To the contrary, as discussed, the investigators informed Malcolm on multiple occasions that he was not under arrest and that he was free to leave any time.

Malcolm argues that he felt compelled to remain in the interview room because the investigators implied that the interview was his only chance to receive credit for acceptance of responsibility. Even if such an implication may create a "coercive environment," that is not the same as a custodial situation for purposes of *Miranda*. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited." *Id.*

4

The videotape shows that Special Agent Young informed Malcolm during the interview that the investigators would pursue charges against him. The investigators then told Malcolm several times that they could help him. They stated that, in the federal system, a defendant who accepts responsibility for a crime receives certain "bonuses" or "credits." The investigators further explained that they would be meeting with the federal prosecutor that day and that they could either tell the prosecutor that Malcolm accepted responsibility or they could pursue the prosecution as if Malcolm was not cooperative.

While the investigators' statements regarding the benefits of accepting responsibility for the crime may have caused Malcolm to feel some pressure to do so, "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it. . .. But police officers are not required to administer Miranda warnings to everyone whom they question." *Mathiason*, 429 U.S. at 495. "Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990).

The investigators never told Malcolm that the interview was his one and only chance to receive credit for accepting responsibility for the crime. In fact, when Malcolm stated that he thought he should probably have an attorney, Special Agent Young simply instructed Malcolm that, if he retained an attorney, to have the attorney contact Young as soon as possible because Young would be talking with the prosecutor that day. The investigators' statements regarding the benefits of accepting responsibility for the crime did not amount to coercion such that Malcolm should reasonably have felt compelled to remain in the interview room and answer the investigators' questions.

Given the totality of the circumstances, the Magistrate Judge correctly concluded that Malcolm was not "in custody" during the portion of the interview ending with Malcolm being formally arrested and Mirandized. Accordingly, Malcolm was not entitled to counsel for that portion of the interview and the investigators were not required to read Malcolm his constitutional rights as required under *Miranda*.

For these reasons, the Court hereby ORDERS as follows:

(1) the Magistrate Judge's Report and Recommendation (Rec. No. 32) is hereby MODIFIED to find that one door to the interview room remained unlocked throughout the interview and that the only other door to the interview room was locked;

(2) the Report and Recommendation is otherwise ADOPTED as the Opinion of this Court; and

(3) the Defendant's Motion to Suppress (Rec. No. 21) is DENIED;

This the 25th day of July, 2007.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge